E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MATT COE-ODESS (Cal. Bar No. 313082)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8957
     Facsimile: (213) 894-6169
     Email:     matt.coe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 5:23-cr-00226-SSS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: September 20, 2024 |
| CHRISTIAN ERNEST BEYER, | Hearing Time: 10:00 a.m. |
| Defendant. | Location:     Courtroom of the Hon. Sunshine S. Sykes |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Matt Coe-Odess, hereby files its sentencing position regarding defendant CHRISTIAN ERNEST BEYER.

//

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report and Sentencing Recommendation, and any other evidence and argument as the Court may permit.

Dated: August 29, 2024         Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

          /s/
MATT COE-ODESS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant threatened to kill Fort Irwin officials and their families because they testified against him in a court martial proceeding, in which defendant was convicted of assault and domestic violence. In a video published on his YouTube channel, defendant declared there was a "bounty" on R.P., the Chief of Police who investigated defendant's act of domestic violence, and he solicited volunteers to kill "Chief [R.P.] and every fucking police officer on that fucking installation." Defendant also repeatedly threatened to kill First Sergeant R.B. and his "whole fucking family" because First Sergeant R.B. responded to the domestic violence incident and later testified against the defendant.

No plea agreement was entered in this case. On June 28, 2024, defendant pled guilty to interstate threats by interstate commerce in violation of 18 U.S.C. § 875(c). (Dkt. 64; Dkt. 63 ("Joint Statement").) For this, the government respectfully recommends that the Court sentence defendant to a low-end Guidelines term of 24 months' imprisonment; a three-year term of supervised release; and the mandatory $100 special assessment.

The government respectfully disagrees with the United States Probation and Pretrial Services Office's (the "USPO") recommendation that defendant's history and characteristics support a downward variance. Defendant has a history of domestic violence, and two days before the instant offense, he allegedly brandished a knife at an elderly man before allegedly attempting to run the man over with his vehicle. Although defendant's 23 years of service in the U.S. Army and reported mental health issues related to his service are

important mitigating factors, these facts do not negate the seriousness of the offense, the significant impact to the victims -- who have also admirably served in the U.S. Army for many years -- and the danger the defendant poses to the public at large. The government respectfully submits that a downward variance is not justified.

**II.   FACTUAL BACKGROUND**

   **A.   Defendant's First Reported Domestic Violence Offense on April 26, 2021**

On or around April 26, 2021, defendant pushed his wife. (Presentence Investigation Report ("PSR") ¶ 48.) In a memorandum dated July 16, 2021, Brigadier General C.D.T. wrote:

> "I am deeply concerned regarding your actions on 26 April 2021. On that date you pushed your wife, barricaded yourself inside your residence with an unregistered firearm, and disobeyed lawful orders. Furthermore, you showed a lack of respect and decorum to Military Police upon your apprehension when you spit chewing tobacco on the floor of the patrol car and urinated in the police interview room."

(Id.) Defendant was charged with assault in violation of 10 U.S.C. § 928, Art. 128. (Id.) Defendant's actions were adjudicated in military court, and the case was resolved through administrative action. (Id.)

   **B.   Defendant's Second Reported Domestic Violence Offense on November 25, 2021**

Seven months later, on or around November 25, 2021, defendant pushed his wife again. (PSR ¶ 49; Declaration of Matt Coe-Odess ("Coe-Odess Decl.") at ¶ 2; Ex. 1.) That same night, defendant also grabbed a knife with the intent to inflict bodily harm on First Sergeant R.B. (who at the time was a Master Sergeant). (Id.) It was

2

also alleged that defendant threatened First Sergeant R.B. by stating, "Don't make me get my gun and shoot you" or words to that effect, although defendant was found not guilty of this particular charge. (Id.)

On or around August 19, 2022, defendant was convicted in a special court martial proceeding of domestic violence (10 U.S.C. § 928b, Art. 128b), assault (10 U.S.C. § 928, Art. 128), contempt or disrespect toward other a noncommissioned or petty officer, (10 U.S.C. § 891 Art. 91), and provoking speeches or gestures (10 U.S.C. § 917, Art. 117). (Id.) Victims R.P., R.B., and K.M. testified against defendant at the special court martial proceeding. (PSR ¶ 35; Coe-Odess Decl. at ¶ 3; Ex. 2.)

As a result of his conviction, defendant received 43 days' confinement, a reduction in grade, and was ordered to forfeit $250 pay per month for four months. (PSR ¶ 49; Coe-Odess Decl. at ¶ 2; Ex. 1.)

**C.   Defendant Threatens To Kill R.P., K.M., R.B and Their Families**

On October 30, 2023, defendant published multiple videos on his YouTube channel, including a video titled, "my terms to [R.B.]." (PSR ¶ 10.) In the video, which is about three minutes long, defendant repeatedly threatened to kill R.P., K.M., R.B. and their respective families. (Id.) Specifically, defendant made the following statements:

- "[T]here's a bounty on Chief [R.P.] and every fucking police officer on that fucking installation."
- "I'm here to fucking take Chief [R.P.] out of position."

3

- "Oh yeah fucking that's gonna be real hard to pull that trigger, right. That's Chief [R.P.]. That's what they wear. That's what the military police wear is Army uniforms. They're faking. Go kill them. All of them. It's fine. Don't worry about it. And if one of you wants to do it, go for it dude. Die a fucking hero."
- "I'm fucking calling out the people who forced me out. Oh the [B.'s] they're a part of this shit too, right. [K.M.], the First Sergeant all of those dudes . . . Go ahead and fucking hang it up or you're harboring those police like you've already done before and I will fucking come and hunt you . . . . I'm coming for you. I'm gonna kill your whole fucking family if they stay there."
- "And the terms are [R.B.], you can always fucking put in your retirement packet tomorrow and I won't hunt you anymore . . . or you can fucking oppose me and I'll kill you and your whole fucking family, right, because they're part of your shit."
- "Otherwise . . . I'll be at your retirement ceremony, I'll be like fuck yeah the [B.'s] are great, yeah we had a problem they testified against me like no big deal, whatever, he was fucking crazy . . . your career is over [R.B.] or I'm going to come to Fort Irwin and kill you and everybody else in there at Fort Irwin. You have like fucking two days or I'm coming myself, and you know I can fucking get there. I will come there with guns. And if you guys shoot me at the fucking gate good for you and if you

> stand there and oppose me at the fucking gate I will shoot you because you're my enemy at that point."

(Id.)  On June 28, 2024, defendant pled guilty to interstate threats by interstate commerce in violation of 18 U.S.C. § 875(c). (Dkt. 64.)  In a joint statement regarding defendant's guilty plea, defendant admitted that he intentionally threatened R.P., R.B., [K.M.],[1] N.J., and their respective families, and that defendant made these statements with the knowledge that his communications would be viewed as threats.  (Joint Statement at ¶ 6.)

### D.   Defendant's Threats Severely Impacted the Victims and Their Families

Defendant's threats significantly affected the victims, who were genuinely terrified that defendant would follow through on his threats.  First Sergeant R.B. was so scared of defendant showing up to Fort Irwin to hurt him and his family that he purchased body armor for his wife and children.  (PSR ¶ 15.)  He was unable to sleep through the night and woke up at random times throughout the night to check the house and make sure his home was safe.  (Id.)  He asked Military Police to conduct checks on his home, twice during the day and twice at night.  (Id.)  When First Sergeant R.B. was awake, he was on "high alert" and ensured that his weapons were loaded and ready in case the defendant showed up. (Id.)

R.B.'s wife, L.B., who also testified against defendant at his August 19, 2022 court martial proceeding, also took the threats seriously.  (PSR ¶ 16.)  She purchased security cameras for her home

---

[1] The joint statement inadvertently identifies this victim as K.J., but it should read K.M.

5

and installed sensors for the windows and doors.  (Id.)  She no longer felt safe walking to her car alone, and she changed her routine to avoid defendant.  (Id.)

Chief of Police R.P. similarly took defendant's threats very seriously.  (PSR ¶ 14.)  He was so convinced that defendant was both capable and intent on following through with his threats that Chief R.P. stayed at work late to avoid going home, where he feared the defendant would come for him.  (Id.)  Chief R.P. also issued a "be on the lookout" (BOLO) to the guards for defendant and added his home and the homes of the other victims to a list of locations most likely to be targeted by bad actors. (Id.)

### E. Defendant Continued to Attack the Victims and Make Subtle Threats While in Federal Custody

On April 24, 2024, the FBI received a handwritten letter from defendant.  (Coe-Odess Decl. at ¶ 4; Ex. 3.)  The letter referred to Police Chief R.P. as a "rapist" and accused the FBI case agent of having sexual relations with another agent.  (Id. at 1-2.)  Defendant showed no remorse for his actions and ended his letter by writing, "Until next time, have a wonderful, safe, non-threatening life."  (Id. at 5.)

### F. Additional Pending Assault Charge from October 2023

On October 28, 2023, two days before defendant threatened to kill the victims, defendant allegedly brandished a knife at a stranger who asked him to move his car.  (PSR ¶ 54.)  Defendant then allegedly drove his vehicle at a group of individuals, in front of several witnesses.  (Id.)  Defendant has been charged with assault with a deadly weapon other than a firearm, in violation of California Penal Code Section 245(a)(1).  (Id.)

6

Later that day, when law enforcement responded to a call regarding defendant, defendant was confrontational and repeatedly cursed and yelled at the responding deputies. (PSR ¶ 53.)

### III. PROBATION'S FINDINGS

The USPO issued a Presentence Investigation Report ("PSR") on August 15, 2024. (Dtk. 67, PSR.) The PSR calculated a total offense level of 17, and a Criminal History Category of I, resulting in an advisory guideline range of 24 to 30 months. (PSR ¶ 111.)

The government does not object to the PSR's guidelines calculation.

### IV. ARGUMENT

The government recommends that the Court sentence defendant to 24 months' imprisonment, followed by a three-year term of supervised release; and a $100 special assessment. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

#### A. Nature and Circumstances of the Offense

Defendant repeatedly threatened to kill the victims and their families. (PSR ¶ 10.) His threats were severe, serious, and credible. (Id.) Defendant personally knew the victims, and he blamed them for testifying against him in his prior court martial proceeding, which itself concerned defendant's domestic violence against his wife and threatening gestures toward a military officer. (PSR ¶ 35.) Defendant had also been convicted of assault for grabbing a knife with intent to inflict bodily harm upon First Sergeant R.B. (PSR ¶ 35; Coe-Odess Decl. at ¶ 3; Ex. 2.) As the PSR recounts, the victims genuinely feared for their safety following

defendant's threats, and defendant's threats left an indelible mark on their lives.  (PSR ¶¶ 13-17.)

### B.  History and Characteristics of Defendant

The defendant has served in the United States Army for 23 years, including three deployments to Iraq where he was in combat.  (PSR ¶ 68.)  Defendant also reports experiencing mental health issues related to his service, including post-traumatic stress disorder.  (PSR ¶ 85.)  The government has considered these significant mitigating factors in recommending a low-end Guidelines sentence of 24 months' imprisonment.

However, the government does not believe that defendant's history and characteristics warrant a downward variance.  In the two years before the instant conduct, the defendant committed two acts of domestic violence against his wife, attempted to inflict bodily harm upon First Sergeant R.B. with a kitchen knife, and allegedly brandished a knife and attempted to run over strangers with his vehicle.  (PSR ¶¶ 48-49; 54.)  As this pattern of violence demonstrates, defendant poses a significant danger to others, and a substantial sentence is warranted to protect the community and deter future criminal behavior.  The need for deterrence is particularly acute for this defendant, who continued to send threatening and harassing communications to the FBI even after his arrest in this case.

The government submits that a low-end Guidelines, 24-month sentence appropriately balances these aggravating and mitigating factors, and appropriately accounts for his acceptance of responsibility.  See USSG § 3553(a)(1).

8

**C.   Need to Avoid Unwarranted Disparities**

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to sentence defendants within the guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  The government's recommended sentence, which is at the low-end range of the guidelines, avoids an unwarranted disparity with similarly situated defendants.

USPO reports that that during the last five years, "there were 46 defendants whose primary guideline was §2A6.1, with a Final Offense Level of 17 and a Criminal History Category of I," and that for the 43 defendants who received a sentence of imprisonment in whole or in part, and the average and median length of imprisonment imposed was 18 months.  (PSR ¶ 126.)  But §2A6.1 is a category that is defined as "Threatening or Harassing Communications; Hoaxes; False Liens" and includes several less serious crimes.  Repeatedly threatening to kill witnesses from a court martial proceeding is a far cry from hoaxes, false liens, and harassing communications.  Even when comparing defendant's threats to other threatening communications, it is hard to imagine a more serious threat than repeatedly threatening to kill multiple individuals and their families and inciting others to do the same.  The government respectfully submits that this comparative sentencing data does not

9

support an 18-month sentence -- which would be a downward departure from the sentencing guidelines -- in this case.

**V. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 24 months' imprisonment, followed by a three-year term of supervised release, and the mandatory $100 special assessment.