CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
MARIAH HOLDER (Bar No. 33184)[1]
Deputy Federal Public Defender
(E-Mail: Mariah_Holder@fd.org)
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
CHRISTIAN ERNEST BEYER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:23-cr-00226-SSS |
| Plaintiff, | **CHRISTIAN ERNEST BEYER'S SENTENCING MEMORANDUM; EXHIBITS** |
| v. | |
| CHRISTIAN ERNEST BEYER, | **Sept. 20, 2024, at 10:00 a.m.** |
| Defendant. | |

## I.   INTRODUCTION

Mr. Beyer served the United States of America for twenty-three years. During that time he served on six tours of duty and spent decades exposed to tank blasts as a trainer and in combat. Mr. Beyer was also injured during an explosion in one of his tours of duty. Mr. Beyer was found to be fully disabled by the military and was honorably discharged. Mr. Beyer's family reports seeing a dramatic change in his behavior over the last several years and Mr. Beyer was the subject of a New York Times article that hypothesized that he, like other veterans, suffered injury to his brain

---

[1] As a government attorney and a member of the Louisiana State Bar. Mariah Holder has been admitted to practice before the United States District Court for the Central District of California.

1

as the result of chronic exposure to tank blasts in addition to acute, documented combat injuries. Ex. L.

Throughout the pendency of his case Mr. Beyer has sought medical and therapeutic treatment which he has not been able to obtain but which the U.S. Department of Veterans Affairs ("VA") is willing and eager to make available to him when he is released. *See* Ex. I, J.

Mr. Beyer believes that his correct guidelines sentencing range is 8-14 months. At the time of sentencing Mr. Beyer will have been incarcerated for approximately 9 months. Mr. Beyer requests that this Court sentence him to credit for time served with three years of supervised release to include the requirements that he participate in the VA Domiciliary program for rehabilitative treatment and participate in location monitoring for 12 months. Mr. Beyer asserts that this sentence is sufficient but not greater than necessary to comply with the objectives set out in 18 U.S.C. § 3553(a).

## II.    PROCEDURAL HISTORY AND OBJECTIONS TO THE PSR

On June 28, 2024, Christian Beyer pled guilty to the one count indictment charging Threats by Interstate Communication, in violation of 18 U.S.C. § 875(c).

In its PSR, the United States Probation Office (the "Probation Office") places Mr. Beyer in Criminal History Category ("CHC") I with one criminal history point and determined that the total offense level is 17 under the Guidelines. PSR, ¶ 43. This offense level was calculated as follows: a base offense of 12 under USSG § 2A6.1(a)(1), plus 2-levels for an offense that involves more than two threats under USSG § 2A6.1(b)(2)(A), plus 6-levels for an official victim in combination with a Chapter 2, Part A offense against the person under USSG § 3A1.2(a), (b), and minus 3-levels for acceptance of responsibility under USSG § 3E1.1(a), (b). PSR ¶ 23-41. An offense level of 17 and a CHC of I results in a recommended Guidelines range of 24 to 30 months in custody. The United States Probation Office, however, in the disclosed Sentencing Recommendation Letter (SLR) recommends a downward variance to 18 months to comply with the purposes of 18 U.S.C. § 3553(a).

1      Mr. Beyer objects to the 6-point increase in his offense level in the PSR based on

2 the official victim status in combination with a charge constituting a Chapter 2 offense

3 against a person. See PSR ¶ 35. Application Note 3 to USSG § 3A1.2 requires that for

4 subsections (a) and (b) to apply, "the offense of conviction was motivated by the fact

5 that the victim was a government officer or employee, a former government officer or

6 employee, or a member of the immediate family thereof." It further indicates that the

7 adjustments under USSG § 3A1.2(a) and (b) do not apply in instances "where both the

8 defendant and the victim were employed by the same government agency and the

9 offense was motivated by a personal dispute." *Id.* Here, the threats in the instant case

10 were motivated by an incident that occurred at Fort Irwin in November of 2021 while

11 the defendant was still employed by the military, as were R.P., K.M., and R.B.  L.B. is,

12 and was at all relevant times, married to R.B. Mr. Beyer remained an active member of

13 the military until he was honorably discharged on February 13, 2023. Ex. A. Further,

14 the government's own Motion in Limine #1 highlights the personal nature of the

15 dispute between Mr. Beyer and the victims, R.B., L.B., K.M., and R.P. Dkt. 58. During

16 the domestic incident on November 25, 2021, Mr. Beyer's wife sought help from her

17 friend, L.B. *Id.* at 5. L.B. and her husband R.B., who was a long time friend and

18 colleague of Mr. Beyer, both came to the Beyer house to intervin in the dispute. *Id.*

19 R.B. then called K.M. who was his direct report and another military colleague. *Id*

20 When efforts to resolve the dispute failed R.P. was called to the scene and the

21 defendant attempted to headbutt R.P. *Id.* R.P., R.B., and K.M. all testified against Mr.

22 Beyer at his court martial hearing and they were all, at the time, military colleagues of

23 Mr. Beyer's. *Id.* Mr. Beyer blamed R.B., L.B., R.P., and K.M. for "forcing him out" of

24 the military which he references in his videos. *Id.* at 3. The basis of the threats under-

25 lying this case were deeply personal, they stemmed out of a domestic dispute between

26 Mr. Beyer and his wife where two friends and later two additional colleagues tried to

27 intervin. Therefore, USSG § 3A1.2(a) and (b) do not apply. Mr. Beyer did not target

28

any of the victims because of their status as government officers, his motivation was purely personal, the result of a dispute between former friends and former colleagues.

Mr. Beyer agrees with the reasoning set forth by the Probation Office in the SRL regarding the downward variance.

## III.    SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(A)

### A.    The Overarching Principle

The very first sentence of 18 U.S.C. § 3553(a) establishes the following requirement: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in subparagraph (2) of this subsection." The Supreme Court has described this as the "overarching provision" in § 3553(a). *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). This statement by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language but is the key requirement that a sentence must satisfy.

Factors which § 3553(a) directs a district court to consider in addition to the guidelines are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of sentencing; (3) the kinds of sentences available; and (4) the need to avoid unwarranted sentence disparities.

### B.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (§ 3553(a)(1))

The Supreme Court has "emphasized that highly relevant – if not essential – to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (internal quotation marks and citation omitted).

#### 1.    Mr. Beyer served his country for twenty-three years before being honorably discharged due to complete disability

Mr. Beyer enlisted in the Army immediately after graduating from high school. PSR ¶ 66. Mr. Beyer served the United States of America for 23 years and 22 of those years were spent as an armored crewman working in and around tanks. *Id.* As a result

4

he was exposed to tank blasts repeatedly as part of his day-to-day military duties. *Id.* In addition to his routine exposure to tank blasts Mr. Beyer was involved in a combat explosion during one of his deployments to Iraq where his tank was blown up by an improvised explosive device (IED). PSR ¶ 68. He relayed that that incident left him "pretty messed up" for about a week. *Id.* He recalled that he was also involved in several lesser explosions during his deployments. *Id.*

Mr. Beyer's former supervisor, and later peer, Jason Crosby, described Christian as, "without a doubt the finest Platoon Sergeant in the tank company where I served as First Sergeant, and one of the best I saw in 25 years of service." Ex. H. Mr. Crosby further described Christian as "a true coach, teach (sic), and mentor to his subordinates and he presented a shining example of mission-focused leadership." *Id.*

Mr. Beyer was found to be fully disabled by the VA. PSR ¶ 80, 102. As a result of his incarceration his family has stopped receiving all benefits and income from his disability payments. PSR ¶ 77. Mr. Beyer's family cites the changes they saw in him after his retirement and prior to his arrest. His aunt, Andrea Gershwin-Mouille, speaks of visits with Christian in the month leading up to his arrest and the fact that his "trauma became VERY obvious, ever present, and [she and his uncle] became more concerned about his mental and physical health." Ex. F. Ms. Gershwin-Mouille notes that "he is not the same person. He is damaged and he desperately needs help," noting also the seriousness of a PTSD diagnosis. *Id.*

### 2.   Mr. Beyer experienced abuse and parental addiction growing up

Mr. Beyer accomplished all that he did in the military despite a difficult childhood marked by abuse and parental substance abuse. Mr. Beyer's parents were both alcoholics while he was growing up and only achieved sobriety well after Mr. Beyer had entered adulthood. PSR ¶ 59. Mr. Beyer's parents divorced when he was eight years old and he split time between both of their houses. PSR ¶ 62. Mr. Beyer's mother remarried a man who was also an alcoholic during the years Mr. Beyer was a

child in the house. PSR ¶ 63. In addition to alcohol Mr. Beyer's father abused methamphetamine. PSR ¶ 59.

Mr. Beyer is reserved when classifying his childhood experiences as abusive but did relay that his parents "hit him with their hands, belts, and spoons multiple times weekly" and that this occurred throughout his childhood. PSR ¶ 60.

Significantly, Mr. Beyer struggled with alcohol abuse himself but has remained sober since December of 2021 when he attended a 23-day inpatient rehabilitation program at the Desert Parkway Behavior Healthcare Hospital. PSR ¶ 93.

### 3. Mr. Beyer's post arrest behavior has been positive despite the complete lack of treatment he has received

Since Mr. Beyer's arrest he has not had any disciplinary issues at the Metropolitan Detention Center where he has been housed, despite the fact that he has not received any treatment or care while at that facility. Additionally, Mr. Beyer has not made any attempts to reach out to any of the victims in this case and has made no further threats of any nature. Mr. Beyer also never took any steps in furtherance of any of the threats made in this case.

### 4. Admission of underlying offense conduct and genuine regret

Mr. Beyer has not only admitted to his conduct, but he has expressed remorse for his actions and for causing the anxiety and distress that resulted from his actions.  PSR ¶ 20.  Mr. Beyer has been actively seeking help through the VA since his incarceration began in an effort to make sure that he gets the treatment necessary to address what he believes was the root cause of his behavior, the trauma he experienced during his 23 years of service.

1

2

**C.   The Proposed Sentence Best Satisfies the Purposes of Sentencing in 18 U.S.C. § 3553(a)**

3

4

**1.   The Proposed Sentence Satisfies the Need for Just Punishment in Light of the Seriousness of the Offense, 18 U.S.C. 3553(a)(2)**

5

6

7

8

9

10

When debating the meaning of "just punishment" under the Sentencing Reform Act, the Senate acknowledged a punitive purpose but stressed the weight of rehabilitation and criminal history in determining what was "just" in any given defendant's circumstance.[2] The Probation Office reached the conclusion that a variance was warranted from Mr. Beyer's guideline range, as they calculated it, given that Mr. Beyer's "history and characteristics are strong factors for mitigation." SLR at 5.

11

12

13

14

15

16

17

18

Given the unique circumstances of this case, the proposed sentence amounts to substantial, meaningful punishment. By sentencing Mr. Beyer to credit for time served for the nine months he has been incarcerated and three years of supervised release to include inpatient treatment at the VA Domiciliary program and 12 months of location monitoring, the Court would be imposing the least restrictive sentence that fulfills all of the goals of sentencing. This sentence would avoid an additional term of custody that would further delay any treatment or rehabilitation for Mr. Beyer who suffers as a result of his years of service to this country.

19

20

21

22

23

24

25

26

27

28

---

[2] *See* Continuing Appropriations 1985-Comprehensive Crime Control Act of 1984, S.Rep. No. 225, 98th Cong. 2d Sess. 67-68 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3250-51 at 75, note 162 ("It has been suggested that one aspect of this purpose of sentencing, 'just deserts,' should be the sole purpose of sentencing . . . While the Committee obviously believes that a sentence should be 'just' and that the punitive purpose is important, it also believes that it is consistent with that purpose to examine the other purposes of sentencing set forth in section 3553(a)(2) in determining the type and length of sentence to be imposed in a particular case.  Rehabilitative considerations may call for a sentence to probation with appropriate conditions where a sentence to a term of imprisonment in other circumstances might be 'just'; incapacitation for an extended period of an offender with serious criminal history might be appropriate where such a long term would not be 'just' if the offender's criminal record were not considered.").

### 2.     The Proposed Sentence Satisfies the Need for Deterrence, 18 U.S.C. 3553(a)(2)(B)

Mr. Beyer has not made any attempts to make additional threats to any of the victims in this case, nor to anyone else, since his arrest. While this may seem insignificant given his incarceration, he has had the benefit of family placing money on his account which has allowed him essentially unfettered access to the phone while incarcerated.

Further, treatment should be viewed as the greatest deterrent available to a man who's mental health and behavior declined so rapidly after 23 years of service to his country and a finding of full disability from the VA. We, as a nation, cannot turn our backs on our injured veterans. Even if some additional term of incarceration were imposed within the guidelines range, it would be brief. Mr. Beyer deserves the treatment he has been seeking and treatment will additionally serve as the best deterrent for any future behavior similar to the charged behavior. The VA is the only organization in the nation dedicated to providing services to the men and women who serve our nation and addressing the unique needs that arise as a result of the kind of harm people experience in that service. Mr. Beyer will be able to access the services he requires to complete his rehabilitation through the VA's Domiciliary program. Ex. J, K.

### 3.     Because Mr. Beyer has several traits lessening any risk for recidivism, the suggested sentence satisfies 18 U.S.C. 3553(a)(2)(C)

Mr. Beyer's vast support system, as evidenced by all of the letters of support, in conjunction with his sustained sobriety indicates that he is not a risk to recidivate. Mr. Beyer is also committed to receiving treatment which he has been trying to obtain during his entire period of incarceration  As his family indicates in their letters, they love and support Mr. Beyer and support him getting help. Both Congress and the Bureau of Prisons cite research that strong family support reduces the risk of

recidivism. Scholars and courts agree that strong family ties correlate to reduced recidivism.

Mr. Beyer's mother writes about how dedicated Christian is to his family and country and that what she believes are his PTSD and TBI symptoms accelerated after his retirement in 2023. Ex B. She asserts that "Christian is committed and eager to begin all his treatment programs." *Id.* Mr. Beyer's sister, Rachel Snyder, wrote about how kind her brother Christian is and the downward spiral she witnessed in his behavior after over 20 years of service to his country. Ex. C. Ms. Snyder begs this Court to give her brother the care he needs to work through his trauma and to take advantage of the opportunity to "not let another veteran slip through the gaping crack in this country's veteran support system." *Id.* Mr. Beyer's father, Creighton Beyer, makes the same appeal to this Court to get Christian the evaluation and treatment he needs "to get back to the man and son I know." Ex. D. Mr. Beyer's sister-in-law, Natasha Potter, describes the change she saw in Christian after his retirement and the changes that she witnessed to his personality and health marked by staying up late and not eating. Ex. E. She also appeals to the Court for treatment for Mr. Beyer. *Id.* Mr. Beyer's second-cousin, Viriginia Franklin, notes that, "[i]f [Christian] had lost a limb in war, he would get medical treatment, as well as empathy." Ex. G. She goes on to express her hope that Christian gets some kind of medical help. *Id.*

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1    **IV.    CONCLUSION**

2        For the reasons given above, Mr. Beyer requests that the Court sentence him to

3    credit for time served with three years of supervised release to follow with the express

4    condition that he participate in the VA's domiciliary program to obtain treatment for

5    his service-related injuries and disability and participate in location monitoring for 12

6    months.

7                                        Respectfully submitted,

8                                        CUAUHTEMOC ORTEGA
                                         Federal Public Defender
9

10   DATED: August 30, 2024         By   */s/ Mariah Holder*

11                                        MARIAH HOLDER
                                         Deputy Federal Public Defender
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **PROOF OF SERVICE**

I declare that I am a resident or employed in Riverside, County, California; that my business address is the Office of the Federal Public Defender, 3801 University Avenue, Suite 700, Riverside, California 92501; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **CHRISTIAN ERNEST BEYER'S SENTENCING MEMORANDUM; EXHIBITS** on the following individual(s) by:

| [] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows: | [ ] Placing same in an envelope for hand delivery addressed as follows: | [ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows: | [X] Via Emailing same addressed as follows: |

**JACQUELINE LIRA**
U.S. Probation & Pretrial Services Officer
Jacqueline_lira@cacp.uscourts.gov

This proof of service is executed at Riverside, California, on **August 30, 2024**. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____.
**ISABEL RIVERA**